IBJ SCHRODER BANK & TRUST COMPANY, as Successor Indenture Trustee, Plaintiff,

v.

MELLON BANK, N.A., Defendant.

IBJ SCHRODER BANK & TRUST COMPANY, as Successor Indenture Trustee, Plaintiff,

v.

KIRKPATRICK & LOCKHART, Defendant.

Nos. 87 Civ. 7306(MGC), 89 Civ. 4183(MGC).

United States District Court, S.D. New York.

Feb. 21, 1990.

---

Rosenman & Colin, New York City by Robert W. Gottlieb, Maria Echaveste, Penina Goldstein, for plaintiff.

Howard, Darby & Levin, New York City by Sara E. Moss, Jack P. Levin, Warren G. Caywood, Jr., C. William Phillips, Vivien B. Shelanski, for defendant Mellon Bank, N.A.

Mudge Rose Guthrie Alexander & Ferdon, New York City by Audrey Strauss, Jed Rakoff, Mark R. Winston, for defendant Kirkpatrick & Lockhart.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Defendants have moved under 28 U.S.C. § 1404(a) to transfer these two related cases to the Western District of Pennsylvania on the ground that that is a more convenient forum. All parties agree that these two cases should be prepared and tried in the same forum. Discovery has been coordinated, and justice and judicial economy require that the two cases either remain together or be transferred together. Indeed, plaintiff has moved to consolidate the two.

At the initial pretrial stages of the first case, I gave great weight to plaintiff's choice of forum, and denied a motion for transfer without prejudice to its renewal after the parties had acquired more information about the location of the witnesses. Plaintiff has recently filed the second case, asserting claims, including a RICO claim, against the Pittsburgh law firm that advised the defendant in connection with the conduct complained of in the first case. Until the second case was filed, the Pittsburgh law firm represented the defendant in the first case.

After careful consideration, I have concluded that the addition of the claims against the Pittsburgh law firm tips the balance of convenience. For the reasons discussed below, these two actions are transferred to the United States District Court for the Western District of Pennsylvania.

## BACKGROUND

Prior to 1979, Mellon Bank, N.A. ("Mellon"), a national bank headquartered in Pittsburgh, loaned money to Sharon Steel Corporation ("Sharon"). In 1979 and 1980, respectively, Mellon became the indenture trustee for two series of subordinated debentures issued by Sharon. Thus, after 1979, Mellon was both a creditor and an indenture trustee of Sharon.

In March and April of 1985, Sharon failed to pay the interest due on the debentures, and Sharon has remained in default to date. At the time of Sharon's default, Mellon attempted to resign as indenture trustee, effective on the appointment of a successor trustee. After Sharon filed a petition for reorganization in the Bankruptcy Court for the Western District of Pennsylvania in August of 1987, plaintiff IBJ Schroder Bank & Trust Company ("Schroder") was appointed successor trustee.

At the time of Sharon's default, Mellon, pursuant to the indentures, established a special account into which it deposited all money and property it collected in repayment of Sharon's indebtedness to Mellon. The funds in this account total approximately $32,000,000, plus interest.

When Schroder was appointed successor trustee, Mellon and Schroder were unable to agree about the proper distribution of the funds in the special account. On October 13, 1987, Mellon filed a declaratory judgment action in the Western District of Pennsylvania seeking a determination that it, as creditor, was entitled to the funds in the special account. On the following day, Schroder filed the first case in this court seeking a declaratory judgment to the contrary and damages for Mellon's alleged breach of its contractual, statutory and fiduciary obligations as indenture trustee. The district court in Pittsburgh determined that it had jurisdiction over the action and the parties, but dismissed Mellon's declaratory judgment action because its resolution would "not resolve the entire controversy between the parties." *Mellon Bank, N.A. v. IBJ Schroder Bank & Trust Co.*, No. 87-2169, slip op. at 8-9, 1989 WL 200443 (W.D.Pa. August 17, 1989).

On June 13, 1989, Schroder filed the second case in this court, a complaint against Kirkpatrick & Lockhart ("K & L"), the Pennsylvania law firm which had advised Mellon with respect to its roles both as creditor and as indenture trustee of Sharon. The complaint alleges that K & L had a conflict of interest when it advised Mellon in both capacities and that K & L actively participated in Mellon's allegedly improper decisions and conduct. The complaint also alleges that K & L mishandled lawsuits brought by Mellon in Pennsylvania state court to recover from Sharon unpaid interest due on the debentures, and drafted and approved allegedly misleading press releases, notices of meetings to debenture holders and trustee reports. When the second case was filed, K & L withdrew as Mellon's counsel in the first case.

## DISCUSSION

28 U.S.C. § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The threshold requirement for transfer under 28 U.S.C. § 1404(a) is that the action "might have been brought" in the transferee court. It is undisputed that this statutory requirement is met in these two civil actions. There is jurisdiction and proper venue in the Western District of Pennsylvania for Schroder's suit against Mellon and Schroder's suit against K & L, and both cases could have been brought there.

The moving party bears the burden of demonstrating that the balance of the statutory factors tips in its favor and warrants transfer. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). I turn to the statutory factors.

1. Schroder also notes that several members of Rosenman & Colin, the New York law firm representing it in these actions, may be required to testify in the Mellon case. Any testimony they would give would go merely to the issue of

### I. Convenience of Parties and Witnesses

K & L is a Pennsylvania law firm with no branch offices in New York. The three K & L partners involved in K & L's representation of Mellon, who would be required to testify at trial, reside and work in Pittsburgh. In addition, all other K & L attorneys who participated in any way in K & L's representation of Mellon, and who therefore might be called as witnesses, are located in Pittsburgh. K & L notes that three K & L attorneys in addition to the three partners directly involved in the representation of Mellon have been deposed by Schroder.

Schroder's offices are in New York. However, it is unclear whether any witnesses from Schroder would be required to testify in either action in light of the fact that Schroder became involved in these actions after all the significant events at issue had occurred.[1]

Mellon has its headquarters in Pittsburgh. Mellon's Corporate Trust Group, through which Mellon rendered its services as indenture trustee, is located in Pittsburgh. The two members of the Corporate Trust Group who dealt with the Sharon debentures reside and work in Pittsburgh. Mellon's Corporate Banking Group, through which Mellon made loans to Sharon, is headquartered in Pittsburgh. Four supervisory members of the Corporate Banking Group who reside and work in Pittsburgh might be called as witnesses. In addition, K & L points to Mellon's general counsel and Mellon's chief litigation counsel as a potential witness. Both reside in Pittsburgh. The general counsel would testify about Mellon's retention of K & L and Mellon's conduct as creditor and indenture trustee. The chief litigation counsel would testify about the conduct of the suits brought by Mellon against Sharon in the Pennsylvania state court to recover unpaid interest.

indemnity for Schroder's attorneys' fees, and not to any substantive issue in the Mellon litigation. Therefore, I do not consider these lawyers significant witnesses.

K & L states that members of the law firm of Baskin Flaherty Elliott & Mannino, a Pittsburgh law firm which undertook the representation of Mellon as trustee after K & L withdrew, might be required to testify about their advice and handling of the state court suits. Since the complaint against K & L alleges that K & L participated in an imprudent decision not to release a report prepared by Ernst & Whinney regarding Sharon's liquidation value, K & L may call representatives of Ernst & Whinney's Pittsburgh office, which prepared the report, to testify about the preparation and content of that report. The complaint also alleges that K & L participated in Mellon's failure to investigate Sharon's financial condition, and witnesses from the Pittsburgh office of Arthur Anderson & Co., which audited and rendered an opinion as to Sharon's financial condition, may be called to testify on that issue. These claims are also part of the complaint against Mellon. Therefore, these witnesses may also be required to testify in that case. In addition, a former Sharon employee who has knowledge of Sharon's financial affairs, including its banking relationships, and who now resides in Pittsburgh, may be a witness in both actions.

According to defendants, the remaining potential witnesses in Schroder's suits against them, with the exceptions discussed below, are scattered throughout the United States. Former officers of Sharon reside in Florida and Illinois. The three other members of the group of banks that made the loans to Sharon are located in New York, Illinois and California, respectively.

Schroder notes that the two members of the Corporate Banking Group who monitored the loans to Sharon work in New York. One of them resides in New Jersey, the other, in Connecticut. In addition, as discussed above, one of the banks involved in the loans is headquartered in New York. Its counsel is also located in New York. Schroder points out that employees from the bank and the bank's counsel may be required to testify about Mellon's activity in seeking repayment of its loans to Sharon.

Although it is difficult to predict at this point exactly who will testify and for how long, it seems clear that the majority of the witnesses are located in Pittsburgh, not New York. It is more convenient for each party to litigate near its own offices. However, given the nature of Schroder's claims against K & L, testimony from members of K & L is likely to be more significant and more time-consuming than testimony from Schroder in that suit. Similarly, it is not clear that any testimony from Schroder will be required in the Mellon action. Further, New York and Pittsburgh are equally convenient or inconvenient for those witnesses who are not located in either. Thus, the inconvenience of a trial in New York to K & L and Mellon would be substantially greater than the inconvenience of a trial in Pittsburgh to Schroder.

## II. The Interest of Justice—Other Considerations That Bear On Transfer

### A. Location of Relevant Events

Mellon's activities as a creditor of Sharon were conducted primarily in New York. Mellon's activities as indenture trustee were conducted primarily in Pittsburgh. However, K & L's activities as counsel to Mellon in both these roles, which are the focus of Schroder's case against K & L, occurred primarily in Pittsburgh. Specifically, K & L's representation of Mellon in its capacity as indenture trustee was undertaken and handled at all times at the Pittsburgh office. All acts by K & L in connection with this representation took place in Pittsburgh. The trust indentures, which form the basis of both suits by Schroder in this court, provide for the application of Pennsylvania law. The allegedly imprudent decisions by Mellon in which K & L allegedly participated were made in Pittsburgh, and K & L's advice was given there. In addition, the state court suits which K & L allegedly mishandled were prosecuted by K & L in the local courts from its office in Pittsburgh. The allegedly misleading documents issued by Mellon with K & L's assistance were prepared and issued in Pittsburgh. This factor favors transfer to Pennsylvania.

## B. *Location of Documents*

The parties dispute the volume and importance of the documents that will be necessary for trial. Most of the relevant documents have been produced in discovery and copies of most of the documents are now located in both New York and Pittsburgh. Therefore, this factor does not favor trial in either forum.

## C. *Docket Conditions*

The relative docket conditions of the transferor and proposed transferee courts may properly be considered in determining a motion to transfer. *De Jesus v. National Railroad Passenger Corp.*, 725 F.Supp. 207, 209 (S.D.N.Y.1989). According to an uncontested affidavit of Mark R. Winston, counsel for K & L, Steven Suddaby, Statistician of the United States Courts based in the Administrative Office in Washington, D.C., informed him that, as of March of 1989, the average docket per judge in the Southern District of New York was 502.6 cases while the average docket per judge in the Western District of Pennsylvania was 315.9 cases. While it is impossible to tell from these numbers how long it would take for any particular case to come to trial in either district, this factor favors transfer to the Western District of Pennsylvania.

## III. *Plaintiff's Choice of Forum*

■ Generally, the plaintiff's choice of forum weighs heavily against transfer. *A. Olinick & Sons v. Dempster*, 365 F.2d 439, 444 (2d Cir.1966). Defendants argue that because plaintiff sues in a representative capacity, its choice of forum carries less weight. In shareholder derivative suits and other similar types of class actions, the accidental residence of the named plaintiff is discounted in weighing the transfer factors. *Koster v. American Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524–525, 67 S.Ct. 828, 831–32, 91 L.Ed. 1067 (1946). Here, under the terms of the trust indentures, the indenture trustee is the only authorized plaintiff, a representative status somewhat different from the one discussed in *Koster*. Yet, Schroder's role as plaintiff is not quite the same as

that of a wronged individual, the traditional plaintiff whose choice of forum is given great weight. The connection of these cases to New York is completely independent of Schroder. Schroder succeeded Mellon as indenture trustee after all of the transactions at issue had been completed and most of the significant events had occurred. It is entirely fortuitous that some of the controversial events took place in the same forum in which the successor trustee resides. No testimony is needed from Schroder because none of Schroder's personnel witnessed the facts in dispute. After Schroder's choice of forum is given due weight, the balance tips in favor of transfer to the Western District of Pennsylvania.

## CONCLUSION

For the foregoing reasons, defendants' motions are granted and *IBJ Schroder Bank & Trust Co. v. Kirkpatrick & Lockhart*, 89 Civ. 4183 and *IBJ Schroder Bank & Trust Co. v. Mellon Bank, N.A.*, 87 Civ. 7396 are transferred to the Western District of Pennsylvania.

SO ORDERED.