MAK MARKETING, INC., Plaintiff,

v.

Steven KALAPOS, et al., Defendants.

Civil Action No. 08–cv–1008 (JCH).

United States District Court,
D. Connecticut.

May 8, 2009.

Jane I. Milas, Nicole Liguori Micklich, Garcia & Milas, New Haven, CT, for Plaintiff.

Stephen P. Fogerty, Halloran & Sage, Westport, CT, for Defendants.

## RULING RE: DEFENDANTS' MOTION TO DISMISS (DOC. NO. 16) AND MOTION TO TRANSFER VENUE (DOC. NO. 18)

JANET C. HALL, District Judge.

## I. INTRODUCTION

Plaintiff MAK Marketing, Inc. ("MAK") brings this suit against defendants Steven Kalapos, Kevin Smith, Secure Eco Shred America, LLC ("SES America"), Secure Eco Shred, LLC ("SES"), and Better Shredder Solutions, LLC ("BSS") (collectively "defendants"). MAK is a Connecticut corporation with a principal place of business in Brookfield, Connecticut. Kalapos and Smith are residents of Michigan. SES America is a limited liability company organized under the laws of Delaware. SES and BSS are limited liability companies organized under the laws of Michigan.

In its Complaint, MAK asserts nine causes of action based on its dealings with defendants during the initiation and operation of a paper shredding business. Defendants have moved to dismiss the suit for improper venue pursuant to Fed. R.Civ.P. 12(b)(3), or, alternatively, to transfer venue pursuant to 28 U.S.C. § 1404(a). They claim that two binding forum-selection clauses preclude MAK from litigating in Connecticut, and further, that Michigan is a more convenient and just forum in which to adjudicate this dispute. In response, MAK argues that the forum-selection clauses in question are either non-binding or inapplicable, and that convenience and justice favor resolving its claims in Connecticut. For the reasons stated herein, defendants' Motion to Dismiss is granted in part and denied in part, and defendants' Motion to Transfer Venue is denied.

## II. STANDARD OF REVIEW

### A. *Motion to Dismiss*

Although defendants have specified that they are seeking dismissal based on improper venue under Fed. R. Civ P. 12(b)(3), when considering motions to dismiss based on the existence of a binding forum-selection clause, the Second Circuit has "refused to pigeon-hole" these claims into a particular clause of Rule 12(b). *Asoma Corp. v. SK Shipping Co., Ltd.*, 467

F.3d 817, 822 (2d Cir.2006). The Second Circuit simply requires that, "where one party has shown an apparently governing forum-selection clause, the party opposing litigation in the so designated forum must make a strong showing to defeat that contractual commitment." *Id.*

B. *Motion to Transfer Venue*

■ Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The objectives of section 1404(a) are "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (internal quotations omitted). The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing. *Excelsior Designs, Inc. v. Sheres,* 291 F.Supp.2d 181, 185 (E.D.N.Y.2003) (citing *Ford Motor Co. v. Ryan,* 182 F.2d 329, 330 (2d Cir.1950)); *see also United Rentals, Inc. v. Pruett,* 296 F.Supp.2d 220, 228 (D.Conn.2003) (placing burden on movant despite presence of forum-selection clause); *O'Brien v. Okemo Mountain, Inc.,* 17 F.Supp.2d 98, 102 (D.Conn.1998) (same). "Section 1404(a) reposes considerable discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Red Bull Associates v. Best Western Int'l,* 862 F.2d 963, 967 (2d Cir.1988) (internal quotation omitted).

## III. BACKGROUND

According to MAK's Complaint, around April 2000, Kalapos and Smith started a paper shredding business in Detroit, Michigan. *See* Complaint (Doc. No. 1) at ¶¶ 10, 20. They operated the business through various entities, including defendants SES and SES America, until January 8, 2007. *See id.* On October 31, 2001, Secure Safe Ecoshred (an assumed name of defendant SES) registered the mark SECURE ECO SHRED and design ("the Marks") in the United States Patent and Trademark Office for services of destruction of confidential information. *See id.* at ¶¶ 13, 14.

Secure Eco Shred businesses provide document shredding and recycling services for customers through the use of large trucks with built-in shredders. *See id.* at ¶ 17. The trucks permit Secure Eco Shred businesses to shred documents at a customer's location and then transfer the shredded product to a recycling plant. *See id.* Kalapos and Smith formed defendant BSS to manufacture these trucks and distribute them to Secure Eco Shred businesses. *See id.* at ¶ 18.

Around September 21, 2004, Kalapos and Smith formed defendant SES America for the purpose of franchising Secure Eco Shred businesses. *See id.* at ¶ 22. Kalapos and Smith successfully promoted the sale of a Secure Eco Shred franchise business in Illinois in 2004, although the Illinois franchise operated without a written franchise agreement. *See id.* at ¶ 21.

Kalapos and Smith individually, and on behalf of SES and SES America, also took steps to develop a Secure Eco Shred franchise in Connecticut. *See id.* at ¶ 23. Specifically, Kalapos and Smith promoted the concept of a Secure Eco Shred franchise to Smith's brother, Michael Smith, as well as to Theodore Rosen and Richard Koffman. *See id.* at ¶ 24. They did so during both in-person meetings and telephone conversations. *See id.* According to MAK, Kalapos and Smith used deceptive practices and made various misrepresentations and omissions in the course of promoting the franchise investment to Michael Smith, Rosen, and Koffman. *See id.* at ¶ 31.

This deception included omissions as to the risky nature of the franchise investment, omissions and deliberate misrepresentations as to realistic projected earnings of the franchise, deliberate misrepresentations as to the forecasting of franchisee profit based on the earnings of the franchisor, and misrepresentations about the profits and expenses the franchisee would face during its first three to five years of operation. *See id.* at ¶¶ 32, 33.

In December 2004, MAK incorporated for the purpose of operating a Secure Eco Shred business in Connecticut and New York. *See id.* at ¶¶ 25, 40. Michael Smith, Elaine Smith, Theodore Rosen, and Richard Koffman are officers of MAK. *See id.* at ¶ 26. After incorporating, MAK immediately began doing business pursuant to verbal assurances and agreements with defendants SES, Kalapos, and Smith. *See id.* at ¶ 25. Specifically, during numerous telephone conversations and in-person meetings, Kalapos and Smith told the MAK officers that, in exchange for franchise fees, Kalapos, Smith and/or SES and SES America would provide MAK with all the benefits of a franchised business, including, *inter alia*, the right to use the Secure Eco Shred trademarks; information and training on the business methods used by successful Secure Eco Shred businesses; marketing and advertising strategy and assistance; and other information regarding running a successful Secure Eco Shred franchise. *See id.* at ¶ 27.

On or about January 5, 2005, MAK paid defendants $12,500.00—one-half of the initial franchise fee of $25,000.00—in consideration for the right to conduct a Secure Eco Shred franchise business. *See id.* at ¶ 29. For approximately one year following this initial payment, Kalapos and Smith accepted franchise fees, royalties, and other consideration from MAK without providing MAK with necessary and relevant franchise disclosure documents,

including, *inter alia*, a franchise agreement. *See id.* at ¶ 30.

On or about March 1, 2006, MAK and defendant SES America executed a Secure Eco Shred America, LLC Franchise Agreement (the "Franchise Agreement"). *See id.* at ¶ 39. The Franchise Agreement granted MAK a nonexclusive right and license to use the Secure Eco Shred licensed trademarks and the Secure Eco Shred System in the operation of a Secure Eco Shred franchised business in seven counties in New York and Connecticut (the "Territory"). *See id.* at ¶ 40.

As part of the Franchise Agreement, MAK was required to purchase shredding trucks from BSS. *See id.* at ¶ 43. Kalapos and Smith intentionally and knowingly made misrepresentations to MAK regarding the trucks built by BSS to induce MAK to purchase two shredding trucks at an inflated price. *See id.* at ¶ 47. Specifically, Kalapos and Smith represented to MAK that BSS built two new trucks for MAK—trucks which MAK subsequently purchased—when in fact one of the vehicles was not new, but rather built from remanufactured parts, some of which were defective. *See id.* at ¶¶ 44–46. MAK was eventually forced to sell one of the trucks at a loss and is continually forced to repair the other truck. *See id.* at ¶ 50.

On January 8, 2007, defendant Smith telephoned his brother, Michael Smith, and informed him that SES America had sold its corporate locations in Detroit, Michigan and Cleveland, Ohio to Iron Mountain, a business competitor of the Secure Eco Shred businesses. *See id.* at ¶ 62. The sale to Iron Mountain resulted in the disclosure of all of the Secure Eco Shred businesses' trade secrets, confidential manuals, business plans, formulas, and other inside information. *See id.* at ¶ 63. Thereafter, defendants ceased use of the Secure Eco Shred Marks, ceased to con-

trol the nature and quality of the services associated with the Marks, terminated the Franchise Agreement with MAK, ceased conducting themselves as a franchisor, and undertook to completely dismantle and shut down the Secure Eco Shred business. *See id.* at ¶¶ 65–71. Nevertheless, even after the sale to Iron Mountain, defendants continued to benefit from the registration of the domain name www.secureecoshred.com, and the toll free vanity phone number 1–877–SHRED–69, but intermingled, or allowed third parties to intermingle, the remaining Secure Eco Shred businesses with Iron Mountain's business. *See id.* at ¶ 65.

On or about May 31, 2007, MAK and SES America executed a Termination of Franchise Agreement and a License Agreement. *See id.* at ¶ 82. Pursuant to the Termination of Franchise Agreement, SES America returned MAK's $25,000.00 franchise fee, without interest. *See id.* at ¶ 85.

Under the License Agreement, SES America granted to MAK a nonexclusive right and license to use the Marks in the operation of a Secure Eco Shred business within the Territory, and further stated that, in exchange for SES America using its best efforts to direct any inquiries it receives from the Territory to MAK, MAK will pay SES America $1,200.00 per year. *See id.* at ¶ 83. Despite this agreement, however, defendants have routed inquiries from potential customers within the Territory to Iron Mountain, or have failed to properly route them to MAK. *See id.* at ¶ 92. Moreover, defendants have failed to consistently maintain the Secure Eco Shred website and toll free telephone number, thereby injuring and irreparably harming MAK's business. *See id.* at ¶ 100. Since May 31, 2007, MAK has continued to operate a Secure Eco Shred business in the Territory. *See id.* at ¶ 88. As of July 2008, MAK shareholders had invested over $750,000.00 in the company, and had not received a return on their investment. *See id.* at ¶ 55.

MAK now brings nine counts against defendants: (1) fraudulent misrepresentation (as to all defendants); (2) negligent misrepresentation (as to all defendants); (3) common law fraud (as to all defendants); (4) violations of the Michigan Franchise Investment Law ("MFIL"), M.C.L.A. §§ 445.1501 *et seq.* (as to all defendants); (5) aiding and abetting violations of the MFIL (as to Kalapos and Smith); (6) violations of the Connecticut Franchise Act, Conn. Gen.Stat. § 42–133h (as to all defendants); (7) violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. §§ 42–110a *et seq.* (as to all defendants); (8) abandonment of the Marks (as to all defendants); and (9) breach of contract (as to SES America). The defendants have moved to dismiss all counts.

## IV. ANALYSIS

### A. *Motion to Dismiss for Improper Venue*

Defendants argue that the District of Connecticut is an improper venue for the resolution of MAK's claims. *See* Memorandum in Support of Motion to Dismiss ("Memo. in Supp."), Doc. No. 16, at 1–2. They base this argument solely on the existence of forum-selection clauses in the Franchise Agreement and the License Agreement. *See id.*

Determining whether to dismiss a claim based on a forum-selection clause involves a four-part analysis. *See Phillips v. Audio Active, Ltd.,* 494 F.3d 378, 383–384 (2d Cir.2007). The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. *See, e.g., D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 103 (2d Cir.2006). The second inquiry is whether the clause is mandatory or per-

missive, *i.e.*, whether the parties are required to bring any dispute to the designated forum or simply permitted to do so. *See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir.1994). The third inquiry asks whether the claims and parties involved in the suit are subject to the forum-selection clause. *See, e.g., Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1358–61 (2d Cir.1993). If the first three inquiries are satisfied, *i.e.*, if the forum clause was communicated to the resisting party, is mandatory, and covers the claims and parties involved in the dispute, the forum-selection clause is presumptively enforceable. *See id.* at 1362–63. The fourth and final inquiry, then, is whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (establishing federal standard relating to enforcement of forum clauses applicable in admiralty and international transactions); *see Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 721 (2d Cir.1982) (applying *Bremen* standard to contractual dispute between domestic parties in non-admiralty context).

In the present case, because defendants base their Motion to Dismiss on two distinct forum-selection clauses—the March 1, 2006 Franchise Agreement clause and the May 31, 2007 License Agreement clause—the court undertakes a separate four-part analysis for each.

### 1. *Franchise Agreement*

The Franchise Agreement contains the following provision:

**21. GOVERNING LAW AND DISPUTE RESOLUTION**

(a) This Agreement is accepted by Franchisee in the State of Michigan (the "State") and, together with the parties' relationship, shall be governed by and construed in accordance with the laws thereof, which laws shall prevail in the event of any conflict between the parties, provided, however, that any Michigan law regulating the sale of franchises or governing the relationship of a franchisor and franchisee will not apply unless its jurisdictional requirements are met independently without reference to this section.

(b) The parties hereto agree that it is in their best interest to resolve disputes between them in an orderly fashion and in a consistent manner. Therefore, the parties hereby agree as follows:

(i) To the extent the parties have not resolved a dispute by negotiation, mediation, internal appeal procedures, or otherwise, Franchise Owner consents and agrees that the following courts shall have personal jurisdiction over it in all lawsuits relating to or arising out of this Agreement or the parties' relationship and hereby waives any defense Franchise Owner may have of lack of personal jurisdiction in any such lawsuits filed in these courts: (A) all courts within the state court system of the State and (B) all courts of the United States of America sitting within the State, including, but not limited to, all the United States District Courts sitting within the State.

(ii) Franchise Owner consents and agrees that venue shall be proper in any of the following courts in all lawsuits relating to or arising out of this Agreement or the parties' rela-

tionship and hereby waives any defense it may have of improper venue in any such lawsuits filed in these courts: the state court of the county where the Franchisor has its principal place of business (presently, Oakland County); and the United States District Court for the Eastern District of Michigan, Southern Division.

Franchise Agreement, Exhibit B to Motion to Dismiss, at 38. Defendants argue that the above provision is an enforceable forum-selection clause naming Michigan, and therefore, MAK has improperly brought the present suit in the District of Connecticut. MAK, on the other hand, argues that the Franchise Agreement contains a permissive forum-selection clause rather than a mandatory one, and thus, under *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir.1994), MAK is not limited to filing suit in Michigan. The court agrees.

■ In *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court held that "the forum clause should control absent a strong showing that it should be set aside." The Second Circuit, however, has since made clear that the "extra protection that *Bremen* accords to mandatory forum selection clauses," is not applicable to a permissive forum-selection clause which "contemplates more than one forum." *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 979 (2d Cir. 1993). Further, "[a]n agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains *specific language of exclusion*." *John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distribs., Inc.*, 22 F.3d 51, 53 (2d Cir.1994) (emphasis added) (holding that a forum-selection clause which stated that, "any dispute arising between the parties hereunder shall come within the jurisdic-

tion of the competent Greek Courts," was permissive rather than mandatory).

Defendants argue that, despite the Franchise Agreement's lack of "specific language of exclusion," it nevertheless evidences the parties' intention to litigate exclusively in Michigan. *Boutari*, 22 F.3d at 53. To support this argument, defendants rely primarily on the Second Circuit's holding in *Seward v. Devine*, 888 F.2d 957 (2d Cir.1989). In *Seward*, the court considered an agreement which stated, "the New York State Supreme Court, Delaware County, shall have jurisdiction over all litigation which shall arise out of any disputes or disagreements between the parties concerning a breach or interpretation of any of the terms of this agreement," as well as two other agreements between the parties which both provided for "venue and jurisdiction" in Delaware County, New York. *Id.* at 962. The court concluded that, "these agreements plainly provided that venue was to be limited solely to the state court in Delaware County," and thus upheld the district court's dismissal of the plaintiffs' claims for lack of jurisdiction. *Id.*

The Second Circuit elucidated the *Seward* decision in *Boutari*. As it explained, "[n]either the analysis nor the result in *Seward* establishes a rule in this Circuit that exclusive jurisdiction is conferred by a contract term specifying which courts 'shall have jurisdiction' in the event of a dispute." *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs.*, 22 F.3d 51, 53 (2d Cir.1994). Rather, as the Second Circuit reiterated, "an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion," because, "the normal construction of the jurisdiction rules includes a presumption that, where jurisdiction exists, it cannot be ousted or

waived absent a clear indication of such a purpose." *Id.* (internal quotations and citations omitted).

█ In the present case, the Franchise Agreement contains no such clear indication. The Franchise Agreement's statements that courts in Michigan "shall have personal jurisdiction" over MAK and that "venue shall be proper" in those courts do not rise to the level of "specific language of exclusion" as required by *Boutari.* *Id.* Consequently, because the forum-selection clause in the Franchise Agreement is permissive rather than mandatory, MAK was not obligated to bring the instant action in Michigan. The Franchise Agreement provides no basis for defendants' Motion to Dismiss.

### 2. *License Agreement*

In the License Agreement, SES America granted MAK a nonexclusive right and license to use the Marks in the operation of a Secure Eco Shred business in the Territory. *See* License Agreement, Exhibit C to Motion to Dismiss, at 1. Further, the License Agreement provided that SES America "will use its best efforts to direct any internet inquiries received by [SES America] through its internet website and/or telephone inquiries received … through its toll free telephone number originating from third parties within [the Territory] to MAK." *Id.* at 1. In exchange, MAK agreed to pay SES America $1,200.00 annually.

The License Agreement contains the following provision.

(f) **Governing Law.** This Agreement shall be subject to and governed in all respects by the statutes and laws of the State of Michigan without regard to the conflicts of laws principles thereof. The United States District Court for the Eastern District of Michigan shall have exclusive jurisdiction and venue over all controversies in connection herewith, and each party hereby consents to such exclusive and personal jurisdiction and venue.

License Agreement, Exhibit C to Motion to Dismiss, at 5. Defendants argue that, under this clause, the United States District Court for the Eastern District of Michigan has exclusive jurisdiction and venue over Count Eight (abandonment of the Marks) and Count Nine (breach of contract as to SES America) of MAK's Complaint. *See* Reply (Doc. No. 26) at 3. MAK contends that the License Agreement is "irrelevant" to the claims in this case because "none of the claims brought by [MAK] are brought in connection with the License Agreement." Memorandum in Opposition to Motion to Dismiss ("Memo. in Opp.") (Doc. No. 22) at 10. The court disagrees.

To determine whether to dismiss Counts Eight and Nine based on the License Agreement's forum-selection clause, the court undertakes the four-step analysis set out in *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383–384 (2d Cir.2007). Because MAK does not contest the first two steps of the analysis—*i.e.*, that the License Agreement's forum-selection clause (1) was reasonably communicated to MAK and (2) is mandatory—the court turns directly to the third step, namely, whether the claims and parties involved in the suit are subject to the License Agreement's forum-selection clause.

To begin, it bears noting that SES America and MAK are the only parties to the License Agreement. *See* License Agreement, Exhibit C to Motion to Dismiss, at 1. Further, the License Agreement explicitly states that it "is not intended to confer upon any person other than the parties [thereto] any rights or remedies [thereunder]." *Id.* at 4. Thus, the License Agreement's forum-selection

clause cannot apply to any defendant other than SES America.

■ In the Second Circuit, "when ascertaining the applicability of a contractual provision to particular claims, [courts must] examine the substance of those claims, shorn of their labels." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 388 (2d Cir.2007). Where the rights being asserted do not originate from the contract containing the forum-selection clause, the clause does not apply. *See id.* at 390; *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 682 (2d Cir.1993).

■ In this case, defendants assert that two of MAK's claims are governed by the License Agreement's forum-selection clause: Count Eight and Count Nine. To determine whether Counts Eight and Nine are governed by the License Agreement, the court must decide whether these counts allege "controversies in connection [ ]with" the License Agreement. License Agreement, Exhibit C to Motion to Dismiss, at 5. If they do, the License Agreement's forum-selection clause is presumptively enforceable as to those claims, and the burden shifts to MAK to make a sufficiently strong showing as to why the forum-selection clause should not be enforced. If, on the other hand, Counts Eight and Nine do not allege controversies in connection with the License Agreement, the License Agreement's forum-selection clause does not govern those claims, and defendants' Motion to Dismiss based on the License Agreement is without merit. Counts Eight and Nine will be addressed separately.

### a. *Count Eight*

Count Eight of MAK's Complaint states, in relevant part:

**Count VIII—Abandonment of the Marks.** Defendant's ... conduct constitutes abandonment of any rights to the Marks by the [d]efendants. Defendants do not control the use of the Marks and do not control the nature and quality of the services provided in connection with the Marks. Defendants have ceased to use the Marks and have no intention of using the Marks in the future. Pursuant to the Lanham Act, 15 U.S.C. § 1127, [d]efendants · have abandoned the rights to the Marks."

Complaint (Doc. No. 1) at ¶¶ 149–152. Based on these allegations, MAK seeks a declaration that, "the mark SECURE ECO SHRED and design USPTO Reg. No. 2,501,837 ... are abandoned and that as such [d]efendants have no right to control or benefit in any way from the domain name www.secureecoshred.com or the telephone number 1–877–SHRED–69." *Id.* at Prayer for Relief F.

■ An abandonment claim arises under federal trademark law, specifically, the Lanham Act, 15 U.S.C. § 1051 *et seq.* The Lanham Act, states:

A mark shall be deemed "abandoned" if either of the following occurs: (1) When its use has been discontinued with intent not to resume use. Intent not to resume may be inferred from circumstances. Nonuse for three years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark. (2) When any course of conduct by the owner, including acts of omission as well as commission, causes the mark to become the generic name for goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

*See* 15 U.S.C. § 1127. "The abandonment doctrine derives from the well-established principle that trademark rights are acquired and maintained through use of a

particular mark." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146 (2d Cir.2007); *see Pirone v. MacMillan, Inc.*, 894 F.2d 579, 581 (2d Cir.1990) ("There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed" (internal quotation omitted)). This is true even of marks that have been registered with the Patent and Trademark Office. *See Basile, S.p.A. v. Basile*, 899 F.2d 35, 37 n. 1 (D.C.Cir.1990) ("Although [a mark's] registration is a predicate to its protection under [section 32(1)(a) of] the Lanham Act, the underlying right depends not on registration but rather on use"). Thus, once an owner ceases to use a mark without an intent to resume use in the reasonably foreseeable future, the mark is said to have been abandoned. *See Silverman v. CBS, Inc.*, 870 F.2d 40, 45 (2d Cir.1989). "Once abandoned, a mark returns to the public domain and may, in principle, be appropriated for use by other actors in the marketplace in accordance with the basic rules of trademark priority." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007) (internal citations omitted).

■ In the context of trademark litigation, because an abandonment claim arises under federal statute, *see* 15 U.S.C. § 1127, a party asserting an abandonment claim against the owner of a mark need not allege that the claim arises out of a contractual relationship with the owner. In the present case, for example, as the Complaint makes clear, MAK asserts rights arising under federal trademark law. It does not assert that SES America breached the License Agreement, nor does it assert that the License Agreement is void.

■ That said, however, "[a] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship." *Anselmo v. Univision Station Group, Inc.*, 1993 WL 17173, at *2, 1993 U.S. Dist. LEXIS 428, at *6 (S.D.N.Y. Jan. 15, 1993). Thus, the court must look to the specific language of the forum-selection clause in question to see whether, despite MAK's assertions, the cause of action stated in Count Eight properly falls under the forum-selection clause.

In this case, the License Agreement states that, "[t]he United States District Court for the Eastern District of Michigan shall have exclusive jurisdiction and venue over all controversies in connection herewith." License Agreement, Exhibit C to Motion to Dismiss, at 5. The Second Circuit has held that the phrase "in connection with" is synonymous with the phrases "relating to" and "associated with." *See, e.g., Coregis Ins. Co. v. American Health Found.*, 241 F.3d 123, 128–129 (2d Cir. 2001) (holding that, the phrases "in connection with" and "associated with" are synonymous with the terms "with respect to," "with reference to" and "relating to," which mean "connected by reason of an established or discoverable relation"); *see also Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 389 (2d Cir.2007) (applying the *Coregis* court's interpretation to forum selection clauses). In contrasting these phrases with the phrase "arising out of," courts have noted that "in connection with," "relating to," and "associated with" are all typically defined more broadly than "arising out of," and are not necessarily tied to the concept of a causal connection. *Coregis*, 241 F.3d at 128; *see also Jackson v. Lajaunie*, 270 So.2d 859, 864 (La.1972) ("'In connection with' is a broader term than 'arising out of the use of the premises for the purposes' of a service station.... This [injury] was linked to the station, associated with the station, related to the station, and, in the absence of a new and restrictive definition of an old and well

understood word, connected with the station") (internal citations and footnote omitted).

Similarly, in *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070 (3d Cir.1997), cited favorably by the Second Circuit in *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 389 (2d Cir.2007), the court held that the phrase "in relation to" in a forum selection clause meant that "the origin of the dispute has some logical or causal connection" to the contract. *Wyeth*, 119 F.3d at 1074. The *Wyeth* court held that the plaintiff's claims were subject to the forum-selection clause in question because the defendant's defense arose out of the contract which contained the forum-selection clause. *Id.* This, the court reasoned, showed that the plaintiff's claims had a "logical" relationship to the contract.

Despite MAK's artful pleading of Count Eight, the abandonment of the Marks claim is connected with the License Agreement. MAK has made explicit its desire to acquire exclusive rights to the use of the Marks in the Territory, *see* Complaint at ¶ 97, and it is reasonable to conclude that MAK's abandonment of the Marks claim is an effort towards this goal. In the Li-

cense Agreement, however, MAK agrees that SES America "is the owner and/or has the right to license" the Marks. License Agreement, Exhibit C to Motion to Dismiss, at 1. It is the defendants' position that the license agreement is still in effect. Affidavit of Kevin Smith, Exhibit 1 to Reply ("Smith Affidavit"), at ¶ 5. Thus, MAK cannot pursue its abandonment of the Marks claim without, at some point, addressing the License Agreement. Therefore, although the abandonment of the Marks claim may not "arise out of" the License Agreement, it nonetheless has a logical relation to the License Agreement, and is a controversy in connection with that agreement. As a result, the License Agreement's binding forum-selection clause is presumptively enforceable as to Count Eight. Moreover, because MAK has not shown that enforcing the forum-selection clause would be "unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching," it has not rebutted this presumption. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Consequently, defendants' Motion to Dismiss for improper venue is granted as to Count Eight.[1]

---

1. MAK asserts Count Eight against all five defendants. *See* Complaint at 148–152. While the License Agreement—and thus the License Agreement's forum-selection clause—applies only to defendant SES America, the court dismisses the abandonment of the Marks claim against the other four defendants for the following reasons.

First, in the License Agreement, the parties agreed that SES America "is the owner and/or has the right to license" the Marks. Thus, it appears from the record before the court that SES America has some interest, and perhaps the sole interest, in the Marks. As a result, it is likely that SES America is an indispensable party to any abandonment claim concerning the Secure Eco Shred Marks. *See Havana Club Holding, S.A. v. Galleon, S.A.*, 974 F.Supp. 302, 310 (S.D.N.Y. 1997) (holding that, in a suit where a party

sought cancellation of a mark under the abandonment doctrine, a non-party with an interest in the mark was a necessary party under Fed.R.Civ.P. 19); *see also MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 382–383 (2d Cir.2006) ("Because Rule 19 protects the rights of an absentee party, both trial courts and appellate courts may consider this issue *sua sponte* even if it is not raised by the parties to the action").

Second, considerations of judicial economy require that MAK's abandonment of the Marks claims concerning the Secure Eco Shred Marks be adjudicated together. Since there appears to be only one forum—namely, the Eastern District of Michigan—where such consolidated adjudication can occur (based on the License Agreement's mandatory forum-selection clause), the court grants defendants' Motion to Dismiss Count Eight as to all

### b. *Count Nine*

■ Count Nine states, in relevant part:

> **Count IX—Breach of Contract (as to SES America).** Pleading in the alternative, [p]laintiff states that SES America materially breached the ... Franchise Agreement multiple times and in numerous ways. SES American's [sic] failure to maintain the Franchise System Website, including the [p]laintiff's webpage, constituted a material breach of the [Franchise] Agreement. SES America's failure to direct advertising and marketing programs constituted a material breach of the [Franchise] Agreement. SES America's failure to use a marketing, advertising, and promotion fund to maximize recognition of the Marks and patronage of Secure Eco Shred businesses constituted a material breach of the [Franchise] Agreement.

*Id.* at ¶¶ 154, 156–158. Defendants argue, *inter alia,* that, because Count Nine claims SES America failed to properly maintain the Secure Eco Shred website, and because SES America's obligation to maintain the website is now governed by the License Agreement, Count Nine falls under the License Agreement's forum-selection clause. The court disagrees.

It is true that the License Agreement currently governs SES America's obligations with respect to the Secure Eco Shred website. *See* License Agreement, Exhibit C to Motion to Dismiss, at 1. Before the License Agreement was signed, however, the Franchise Agreement governed those obligations. *See* Franchise Agreement, Exhibit B to Motion to Dismiss, at 11. While portions of MAK's Complaint allege actions by SES America regarding the website which, if true, would appear to breach to License Agreement,

defendants so that adjudication may occur in that forum, should MAK wish to pursue its

*see, e.g.,* Complaint at ¶¶ 98–99, the Complaint also alleges that the website was improperly maintained well before the License Agreement was signed, *see, e.g.,* Complaint at ¶¶ 65, 91. Count Nine is based on the latter allegations; it clearly alleges that SES America's failure to maintain the Secure Eco Shred website breached the Franchise Agreement, not the License Agreement. *See* Complaint at ¶¶ 154, 156. Thus, Count Nine is not a "controversy in connection with" the License Agreement even under the broad reading of the phrase, and is not governed by the License Agreement's forum-selection clause. As a result, defendants' Motion to Dismiss is denied as to Count Nine.

### B. *Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)*

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In determining whether transfer of venue is appropriate, district courts must engage in a two-part inquiry, asking: (1) whether the action "might have been brought" in the proposed transferee forum and, if so, (2) whether the transfer promotes convenience and justice. *See Schertenleib v. Traum,* 589 F.2d 1156, 1161 (2d Cir.1978); *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.,* 119 F.Supp.2d 433, 436 (S.D.N.Y.2000).

■ In assessing whether an action "might have been brought" in the proposed transferee forum, the court must determine whether the defendants were subject to personal jurisdiction in that forum when the action was commenced and

abandonment of the Marks claims.

whether venue would properly lie there. *See Kiss My Face Corp. v. Bunting,* 2003 WL 22244587, 2003 U.S. Dist. LEXIS 17096 (S.D.N.Y. Sept. 29, 2003).

Defendants move to transfer this matter to the United States District Court for the Eastern District of Michigan. It appears that defendants were subject to personal jurisdiction in that forum when this action was commenced: defendants Kalapos and Smith reside in the Eastern District of Michigan, defendants SES and BSS are limited liability companies organized under the laws of Michigan, and defendant SES America expressly consented to jurisdiction in the Eastern District of Michigan in both the Franchise and License Agreements. Further, despite MAK's claim that "it is unlikely that a Michigan federal court would determine that [this] action could have been brought there," the court finds that venue would properly lie in Michigan. In an action where jurisdiction is founded on diversity of citizenship, as this suit is, venue is generally proper in a district where any defendant resides, if all defendants reside in the same state. *See* 28 U.S.C. § 1391(a). Because "a defendant that is a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced," 28 U.S.C. § 1391(c), based on the allegations in the Complaint, all defendants in this action appear to reside in Michigan. Consequently, this suit "might have been brought" in the Eastern District of Michigan. 28 U.S.C. § 1404(a).

■ In the second part of the section 1404(a) inquiry, the court must consider whether transferring this case to the Eastern District of Michigan would promote convenience and justice. In determining whether transfer is warranted "for the convenience of the parties and witnesses [and] in the interest of justice," 28 U.S.C. § 1404(a), a district court considers, *inter alia:* " '(1) the plaintiff's choice of forum;

(2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; and (7) the relative means of the parties.' " *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106–107 (2d Cir.2006) (citing *Albert Fadem Trust v. Duke Energy Corp.,* 214 F.Supp.2d 341, 343 (S.D.N.Y. 2002)). Moreover, in the context of a section 1404(a) analysis, a "forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration ... nor no consideration ...., but rather the consideration for which Congress provided in § 1404(a)." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 31, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In other words, the existence of a forum-selection clause is but one factor in the court must consider.

### 1. *Plaintiff's Choice of Forum*

■ A plaintiff's choice of forum is generally "entitled to substantial consideration." *In re Warrick,* 70 F.3d 736, 741 (2d Cir.1995). Defendants argue that this deference is inappropriate when there exists a forum-selection clause providing for a forum other than that chosen by the plaintiff. *See, e.g., Outek Caribbean Distribs. v. Echo, Inc.,* 206 F.Supp.2d 263, 266 (D.P.R.2002) ("While a plaintiff's choice of forum is ordinarily given deference by the courts, this deference is inappropriate when the parties have entered into a contract providing for a different forum"). This argument is without merit, however, when the forum-selection clause in question is permissive. *See Micro–Assist v. Cherry Communs.,* 961 F.Supp. 462, 465 (E.D.N.Y.1997) (Despite a permissive forum-selection clause indicating Dallas County, Texas, the court found that plain-

tiff's forum choice—the Eastern District of New York—"should ... be respected," a factor which weighed against transfer to Texas).

For example, in *Outek Caribbean Distribs. v. Echo, Inc.*, 206 F.Supp.2d 263 (D.P.R.2002), the district court considered a motion to transfer in light of a forum-selection clause in which the parties had previously agreed that, "[the] distributor shall bring any legal proceeding arising out of [the distribution agreement in question] only in the federal or state courts located in the Counties of Cook or Lake and the State of Illinois." *Id.* at 265. Despite this agreement, the plaintiff distributor filed suit in the District of Puerto Rico. Based on the mandatory forum-selection clause, the court found that plaintiff's choice of forum was not entitled to the usual deference.

 In the present case, however, the Franchise Agreement contains a permissive forum-selection clause, rather than a mandatory one. Accordingly, MAK's choice of the District of Connecticut is entitled to substantial consideration, a fact that weighs heavily against transferring the case to Michigan.

### 2. *Convenience of Witnesses*

The "convenience of witnesses" factor is principally aimed at weighing the relative convenience of non-party witnesses. *See Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y.1990) ("While the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor") (internal citation omitted). A party moving under section 1404(a) must specify the key witnesses to be called and make a general statement of what their testimony will cover. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *rev'd on other grounds*, 652 F.2d 278 (2d Cir.1981).

"[I]t is not the prospective number of witnesses in each district that determines the appropriateness of a transfer, but, rather, the materiality of their anticipated testimony." *Schwartz v. Marriott Hotel Servs., Inc.*, 186 F.Supp.2d 245, 249 (E.D.N.Y.2002) (internal quotation omitted).

In support of their motion to transfer, defendants offer a list of twelve potential non-party witnesses who either reside or work in Michigan. Six of these witnesses are expected to offer testimony concerning defendants' sale of assets to Iron Mountain; three witnesses will offer testimony that defendants were not pursuing a franchise business in Connecticut, but rather it was MAK's officers who pursued defendants; two witnesses will offer testimony concerning defendants' sale of shredding trucks to MAK; and one witness will testify as to "various interactions with Michael Smith to refute many of [MAK's] claims." Smith Affidavit at ¶ 8(f).

MAK, on the other hand, states generally that its non-party witnesses will likely include employees or representatives of Iron Mountain, which has its corporate headquarters in Boston, Massachusetts. *See* Memo. in Opp. at 25–26. MAK also argues, however, that "the most important witnesses are likely to be party witnesses." *Id.* The court agrees.

The bulk of the claims in this action appear to relate to interactions between MAK officers and defendants Kalapos and Smith. While non-party witnesses are no doubt relevant to the parties' claims and defenses, the crux of the dispute will likely be presented through the testimony of the MAK officers, Kalapos, and Smith. Further, because neither party has provided the court with detailed and specific information concerning the testimony any potential non-party witnesses would give, it is difficult for the court to assess the mate-

riality of such testimony. As a result, the court finds that this factor is neutral.

### 3. *Location of, and Access to, Sources of Proof*

Although the location of relevant documents and other sources of proof is entitled to some weight, both the parties to this suit and courts in the Second Circuit recognize that, "modern photocopying technology and electronic storage deprive this issue of practical or legal weight." *Charter Oak Fire Ins. Co. v. Broan–Nutone, L.L.C.,* 294 F.Supp.2d 218, 221 (D.Conn.2003). Because neither party has provided any basis for the court to find that accessing evidence would be problematic or prohibitively expensive in either jurisdiction, the court finds that this factor is neutral.

### 4. *Convenience of the Parties*

The convenience of the parties must be taken into account when considering a motion to transfer. In this case, the existence of a forum-selection clause—albeit a permissive one—is determinative of the parties' convenience. *See Hummingbird USA, Inc. v. Tex. GSL Corp.,* 2007 WL 163111, 2007 U.S. Dist. LEXIS 4596 (S.D.N.Y. Jan. 22, 2007) ("A permissive forum selection clause ... is determinative of the parties' convenience") (citing *Richardson Greenshields Secur., Inc. v. Metz,* 566 F.Supp. 131, 133 (S.D.N.Y.1983)). Thus, the court must conclude that Michigan is a convenient forum for the adjudication of this dispute. This factor weighs in favor of transfer.

### 5. *Locus of the Operative Facts*

The locus of operative facts is an important factor to be considered in deciding where a case should be tried. *See 800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 134 (S.D.N.Y.1994). To determine where the locus of operative facts lies, courts look to "the site of events from which the claim arises." *Id.*

In this case, MAK argues that "a substantial part of the acts and omissions giving rise to the claims ... occurred in Connecticut." Memo. in Opp. at 23. MAK bases this argument primarily on the fact that the representations that form the basis for the claims in this suit were made "via telephone and email while Michael Smith, the direct recipient of most such representations, was in Connecticut." *Id.* Contrary to MAK's apparent belief, however, in the context of a motion to transfer, " 'misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received.' " *In re Nematron Corp. Secs. Litig.,* 30 F.Supp.2d 397, 404 (S.D.N.Y.1998) (quoting *Purcell Graham, Inc. v. National Bank,* 1994 WL 584550, 1994 U.S. Dist. LEXIS 15196 (S.D.N.Y. Oct. 21, 1994); *see also IBJ Schroder Bank & Trust Co. v. Mellon Bank, N.A.,* 730 F.Supp. 1278, 1281 (S.D.N.Y.1990) (finding transfer appropriate where misleading documents issued by defendant were prepared in transferee forum)). Thus, it appears that the locus of the operative facts lies in Michigan, and therefore this factor weighs in favor of transfer.

### 6. *Availability of Process to Compel Attendance of Witnesses*

A related factor in the court's determination of a transfer motion is the ability to compel the attendance of witnesses. This factor "is generally relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship." *Hawley v. Accor N. Am., Inc.,* 552 F.Supp.2d 256, 260 (D.Conn.2008) (citation omitted). With respect to third-party witnesses, under the Federal Rules of Civil Procedure, the court cannot require "a person who is not a party or an officer of a party to

travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business" to appear before it. *See* Fed.R.Civ.P. 45(c)(3)(A)(ii).

As noted above, the parties have indicated that potential non-party witnesses reside and/or work in Michigan and Boston, Massachusetts. Neither plaintiff nor defendants have provided any information suggesting that these potential non-party witnesses would be unwilling to travel to Connecticut to testify in this matter.[2] Further, neither plaintiff nor defendants have provided any information suggesting the testimony of the potential non-party witnesses is unique. Absent detailed information as to these aspects, the court finds that this factor is neutral. *See Pitney Bowes, Inc. v. National Presort, Inc.,* 33 F.Supp.2d 130, 131 (D.Conn.1998) (transfer was not warranted where it was not clear that identified non-party witnesses would be unwilling to testify).

### 7. *Relative Means of the Parties*

When a court is assessing a motion to transfer pursuant to section 1404(a), "[t]he 'relative financial hardship on the litigants and their respective abilities to prosecute or defend an action in a particular forum are legitimate factors to consider.'" *Hawley v. Accor N. Am., Inc.,* 552 F.Supp.2d 256, 260 (D.Conn.2008) (quoting *Michelli v. City of Hope,* 1994 WL 410964, at *3, 1994 U.S. Dist. LEXIS 10755, at *3 (S.D.N.Y. 1994)). MAK argues that it is a "relatively small corporation" whose business "has not had a profitable year yet," while the defendant corporations are now defunct and the individual defendants have "no apparent need to work." Memo. in. Opp. at 33. MAK further argues that transferring this case to Michigan "may preclude plaintiff's

ability to prosecute their [sic] claims at all." *Id.*

Defendants, on the other hand, contend that MAK officers Rosen and Koffman are "wealthy business owners of substantial means," and that Michael Smith is "an experienced franchise owner." Reply at 9. They further contend that defendant Smith was scheduled to begin a new job in December 2008, and that defendant Kalapos is the primary care giver for his two children, and thus, litigation outside of Michigan would be "disruptive and inconvenient to them." *Id.*

As previously noted, it appears that, regardless of whether this suit is litigated in Connecticut or Michigan, some of the litigants will be inconvenienced. Based on the affidavits of Kevin and Michael Smith, however, neither MAK nor defendants has shown that granting or denying a transfer would be unduly burdensome based solely on the relative means of the parties. Thus, the court finds this factor to be neutral.

### 8. *Trial Efficiency, the Interests of Justice, and Summary of Factors*

■ Finally, the court must consider trial efficiency and the interests of justice. The defendants argue that it would be in the interests of justice to have this dispute resolved in Michigan because, *inter alia,* Michigan law likely governs all of MAK's claims. Reply at 11–12. However, even were the court to assume that Michigan law applies to all claims in this dispute—an assumption the court is not prepared to make—"the 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substan-

---

2. In fact, it is Michael Smith's belief that, "any non-party witness currently residing in Michigan will voluntarily travel to Connecti- cut to testify in this matter." Affidavit of Michael Smith, Exhibit A to Memo. in Opp. ("M. Smith Affidavit") at ¶ 47.

tive law of other states." *Hummingbird USA, Inc. v. Tex. GSL Corp.*, 2007 WL 163111, 2007 U.S. Dist. LEXIS 4596 (S.D.N.Y. Jan. 22, 2007).

Likewise, defendants' argument that trial efficiency and the interests of justice would best be served by transfer because the parties can expect a "speedier trial" in Michigan must be rejected. Reply at 12–13. This case has been pending in this court for ten months. The court issued a scheduling order and case management plan on January 22, 2009 (Doc. No. 29), and discovery is scheduled to be completed in September 2009. Dispositive motions are to be filed no later than October 30, 2009. While the court is aware of the statistics cited by defendants, *see* Reply at 12–13, the court knows of no reason to believe that this case will not be resolved within 24 months of its filing, even if it goes to trial. Consequently, the court cannot find that a transfer would result in a speedier trial, as defendants suggest.

Finally, it bears noting that trial efficiency and the interests of justice do not require the transfer of this suit solely because MAK's abandonment of the Marks claim is dismissed without prejudice. The court is aware that, should MAK re-file this claim in the Eastern District of Michigan, the commencement of separate proceedings in two districts is likely to inconvenience the parties. Nevertheless, the court's "twin commitments to upholding forum selection clauses where these are found to apply and deferring to a plaintiff's proper choice of forum" constrain the court, in this case, to treating MAK's claims separately. *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 393 (2d Cir.2007); *cf. Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (holding that district courts are required to compel arbitration of claims subject to arbitration clause

"even if the result is 'piecemeal' litigation").

In sum, the majority of the factors the court has considered in the section 1404(a) analysis are neutral. The two factors that weigh in favor of transfer—the convenience of the parties and the locus of the operative facts—are not enough to outweigh the substantial consideration given the plaintiff's choice of forum. Thus, after examination of the factors listed above, the court finds that defendants have not carried their burden of establishing the propriety of transfer by a clear and convincing showing. *Excelsior Designs, Inc. v. Sheres*, 291 F.Supp.2d 181, 185 (E.D.N.Y. 2003) (citing *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir.1950)). Defendants have not demonstrated that "convenience and justice for all parties demands that the litigation proceed elsewhere." *United States Barite Corp. v. M.V. Haris*, 534 F.Supp. 328, 330–331 (S.D.N.Y.1982) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). Accordingly, defendants' Motion to Transfer is denied.

## V. CONCLUSION

For the reasons stated herein, defendants' Motion to Dismiss (Doc. No. 16) is **GRANTED** as to Count Eight and **DENIED** as to all other claims. Count Eight is dismissed without prejudice to refiling in the Eastern District of Michigan. Defendant's Motion to Transfer Venue (Doc. No. 18) is **DENIED**.

**SO ORDERED.**