JOHN WYETH & BROTHER
LIMITED, Appellant,

v.

CIGNA INTERNATIONAL
CORPORATION,
Appellee

No. 96–1653.

United States Court of Appeals,
Third Circuit.

Argued Feb. 28, 1997.

Decided July 23, 1997.

Daniel J. Thomasch (Argued), Diana L. Weiss, Donovan, Leisure Newton & Irvine, New York City, Murray S. Levin, Pepper Hamilton & Scheetz, Philadelphia PA, for Appellant.

Richard M. Jordan (Argued), Samuel J.B. Angell, White and Williams, Philadelphia, PA, for Appellee.

Before SCIRICA and ALITO, Circuit Judges, and LAY, Senior Circuit Judge *.

## OPINION OF THE COURT

ALITO, Circuit Judge.

An English pharmaceutical company is fighting to keep its lawsuit located in the United States. Its American insurance company opponent counters that proper location for the lawsuit is England, not the United States. The English company, John Wyeth and Brother Limited ("Wyeth"), sued its American insurer, CIGNA International Corporation ("CIGNA"), in federal district court in Pennsylvania, seeking an adjudication of its rights under certain policies relating to product liability claims in the courts of the United Kingdom and the Republic of Ireland. The district court granted summary judgment for CIGNA, holding that a forum selection clause in a 1990 contract between the parties vested exclusive jurisdiction in the courts of England. Wyeth appealed, but we affirm.

### I.

Wyeth manufactures and supplies pharmaceuticals in the United Kingdom and Ireland. Since 1987, Wyeth has defended itself in the courts of those countries against more than 11,000 product liability claims that relate to its manufacture and sale of benzodiazepine products. Most of the claims concerned Ati-

* The Honorable Donald P. Lay of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

van, a tranquilizer that allegedly caused dependency and a number of other deleterious side effects. Other claims were based on Wyeth's manufacture and sale of Normison and Loramet, which were prescribed as hypnotics or sleeping pills.

Wyeth had different primary insurance coverage for three different time periods. First, for product liability claims from November 1, 1972 through October 31, 1977, Wyeth had local insurance coverage in the United Kingdom and Ireland through Guardian Royal Exchange Assurance, Limited ("GRE") for indemnification and the payment of defense costs. Second, for product liability claims in connection with products manufactured and distributed in the U.K. from November 1, 1977 through October 31, 1980, Wyeth had coverage under three occurrence-based insurance policies issued by CIGNA's predecessor, the American Foreign Insurance Association ("AFIA").[1] These policies provided coverage for Wyeth's parent corporation, the American Home Products Corporation ("AHPC"), a New Jersey-based entity, and its U.K. subsidiaries, including Wyeth. Third, for occurrences after November 1980, Wyeth relied on self-insurance.

Wyeth asserts that, although CIGNA and GRE were obligated to pay defense costs relating to claims covered by their policies, as of July 1989, both companies had refused to advance such payments "on the basis, *inter alia,* that they had not yet determined which policies were triggered by which claims in the underlying litigation." (Appellant's Br. at 11). Accordingly, Wyeth and its parent, AHPC, allegedly proposed that, as an interim measure, CIGNA and GRE each pay one-third of these costs and that Wyeth pay the remaining one-third. On January 11, 1990, AHPC, Wyeth, CIGNA, and other parties entered into an agreement (the "1990 Agreement") to "allocat[e] the responsibility for Defense costs with respect to Ativan-related injury claims for the life of the Agreement." (App.52). The 1990 Agreement stated that the parties had been unable to agree as to which of the insurance policies applied to the individual product liability claims and that "the parties intend[ed] to

adopt [the 1990 Agreement] by way of compromise and accord, and without prejudice to or waiver of their respective positions." (App.52). Under the 1990 Agreement, CIGNA agreed "to pay [thirty three and one third percent] . . . of defense costs incurred to date and hereafter during the term of the Agreement." (App.54). Either party had the right to terminate the agreement after giving 90 days notice. The 1990 Agreement contained a "Reservation of Rights" clause which stated that:

> The payment of thirty three and one third percent of Defense costs pursuant to this Agreement does not constitute evidence of, or an admission by either party regarding, the appropriate apportioning of Defense costs of the Carriers under the policies issued to the Insured Companies.

(App.55). Most important for purposes of this appeal, the 1990 Agreement contained a forum selection clause, which provided:

> This Agreement shall be governed by and construed in accordance with English law, and the English Courts shall have exclusive jurisdiction in relation to any dispute arising under or out of or in relation to this Agreement.

(App.56).

As of January 11, 1990, defense cost obligations for claims arising during the period from November 1, 1972, through October 31, 1977, were the responsibility of GRE. In late 1990, however, GRE exercised its contractual right to tender the aggregate amount of the limits of its coverage. This tender terminated GRE's responsibilities with respect to Wyeth's defense of the benzodiazepine litigation.

Wyeth states that the GRE tender implicated, for the first time, five AFIA insurance policies covering the 1972–77 policy years. These policies allegedly provided Wyeth with excess coverage over and above other insurance coverage Wyeth may have possessed. Hence, according to Wyeth, once GRE tendered the limits of its claims, Wyeth had, for the first time, a claim against CIGNA under the 1972–77 policies for costs incurred after October 5, 1990. CIGNA, however, refused

---

**1.** CIGNA acquired AFIA in 1984.

to pay Wyeth's costs to the extent they exceeded the amount that CIGNA had agreed to pay pursuant to the Agreement. CIGNA contends that Wyeth sought retrospectively to reallocate past defense costs that had been settled at 33.33% and to increase CIGNA's share to more than 60%.[2]

In September 1995, Wyeth brought suit against CIGNA in the Eastern District of Pennsylvania. The Complaint sought a declaratory judgment that CIGNA was required to pay "any and all unreimbursed defense costs incurred by [Wyeth] in the defense of the benzodiazepine litigation, to the extent such defense costs concern claims occurring during the period from November 1, 1972 through October 31, 1980." (App.18). In addition, the Complaint sought an award of damages. Given that the Complaint asserted that CIGNA had "refused to pay [Wyeth's] costs of defending the benzodiazepine litigation to the extent such costs … exceeded the amount of the payments made by [CIGNA] to [Wyeth] pursuant to the [1990] Agreement," CIGNA countered that the district court lacked jurisdiction over the suit due to the forum selection clause in the Agreement that gave the English courts exclusive jurisdiction over *"any dispute arising under or out of or in relation to this Agreement."* CIGNA argued that since Wyeth's Complaint explicitly sought expenses "unreimbursed" by the 1990 Agreement, it "related to" the 1990 Agreement and was therefore subject to the 1990 Agreement's forum selection clause. In addition, CIGNA argued that the 1990 Agreement was implicated as a result of the defenses it had asserted to Wyeth's Complaint. In its motion for summary judgment, CIGNA explained:

> By this lawsuit plaintiff seeks to do two things:
> (a) Assess defendant with a larger percentage of the defense costs for past expenses rather than the 1/3rd already paid as a compromise and accord under the [1990] Agreement; and
> (b) Without terminating the [1990] Agreement, require the court to determine the

share of defense costs to be paid by the defendant for future expenses.

(App.49).

Wyeth, in turn, protested that its right to defense costs arose out of a series of insurance contracts that were entered into prior to 1990 and that contained no forum selection clauses. Wyeth argued that the parties never intended for the forum selection clause in the 1990 Agreement to cover disputes arising under the original insurance contracts.

The district court, however, held that the "arising in relation to" language in the 1990 Agreement's forum selection clause was broad enough to cover a dispute for costs "unreimbursed" by the 1990 Agreement. In addition, the court held that the defenses CIGNA asserted against Wyeth's suit in its Answer also implicated the 1990 Agreement, and granted CIGNA's Rule 56(c) motion for summary judgment. Wyeth then took this appeal.

### II.

This appeal raises a single issue: did the district court err in granting summary judgment on the ground that the dispute here arose "in relation to" the 1990 Agreement. Review of a grant of summary judgment is plenary. *See Western United Life Assurance Co. v. Hayden,* 64 F.3d 833, 837 (3d Cir.1995). Accordingly, "we must determine whether the district court properly concluded that no genuine issue as to a material fact remained for trial, and that the moving party was entitled to judgment as a matter of law." *First State Underwriters Agency v. Travelers Ins. Co.,* 803 F.2d 1308, 1311 (3d Cir.1986) (citations and internal quotation marks omitted). The question of the scope of a forum selection clause is one of contract interpretation. "In order for us to affirm the district court with respect to summary judgment, we must determine that the contract is so clear that it can be read only one way." *American Flint Glass Workers Union v. Beaumont Glass Co.,* 62 F.3d 574,

---

**2.** CIGNA states that, as of April 1996, Wyeth had apprised it that defense costs had reached approximately $29 million. According to CIGNA, its payments up to that point, under the 1990 Agreement, had amounted to approximately $9.5 million.

580–81 (3d Cir.1995) (citations and internal quotations marks omitted).

As previously noted, the forum selection clause in the Agreement states that the agreement is to be governed by "English law." The parties, however, make little reference to English contract law. In view of the parties' briefing, we will assume that they do not rely on any distinctive features of English law and we will therefore base our decision on general contract law principles. *Cf. Sharma v. Skaarup Ship Mgt. Corp.*, 916 F.2d 820, 825 & n. 3 (2d Cir.1990) (applying New York law to interpret a contract governed by English law where parties agreed that the relevant New York law was the same as English law); *cf. also Mellon Bank v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1005 n. 1 (3d Cir.1980) (where district court applied Pennsylvania's law of contract interpretation and parties made arguments based on the same, any objections to the application of Pennsylvania law to the contract interpretation question were waived).

■ As with any contract provision, in the interpretation of the 1990 Agreement's forum selection clause, we first look to the text of the contract to determine whether it unambiguously states the parties' intentions. *See American Flint*, 62 F.3d at 581. To be "unambiguous," a contract clause must be reasonably capable of only one construction. *Id.*

■ The dispute here is over the meaning of the phrase "arising in relation to." In deciding whether contract language is unambiguous, a court not only asks whether the language is clear, but also hears the proffer of the parties and determines if there are "objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." *Id.* (citation and internal quotation marks omitted).

In this case, we must interpret the provision in the forum selection clause that gives the English courts exclusive jurisdiction over "any dispute arising . . . in relation to" the

1990 Agreement. The ordinary meaning of the phrase "arising in relation to" is simple. To say that a dispute "arise[s] . . . in relation to" the 1990 Agreement is to say that the origin of the dispute is related to that agreement, *i.e.*, that the origin of the dispute has some "logical or causal connection" to the 1990 Agreement. *Webster's Third New International Dictionary*, 1916 (1971).

Applying this interpretation, it is clear that the dispute between Wyeth and CIGNA over the payment of defense costs arose in relation to the 1990 Agreement. Wyeth's Complaint outlines the origin of the dispute as follows. Wyeth "demanded that [CIGNA] pay [Wyeth's] costs of defending the benzodiazepine litigation," but CIGNA "refused to pay [those] costs to the extent such costs . . . exceeded the amount of the payments made by [CIGNA] pursuant to the [1990] Agreement." (App.14–15). These allegations show that there is a "logical or causal connection" between the parties' dispute and the 1990 Agreement.

Wyeth advances a narrower interpretation of the requirement that a dispute subject to the forum selection clause must be one "arising . . . in relation to" the 1990 Agreement. Specifically, Wyeth suggests that, in order for the dispute to fall within the clause, Wyeth's claims must be based upon[3] or "grow[ ] out of CIGNA's duties under the 1990 Agreement." (Appellant's Br. at 29). This argument, however, distorts the language of the forum selection clause in at least two important ways. First, that clause does not say that the English courts have exclusive jurisdiction merely of *claims* that bear the necessary relationship to the 1990 Agreement; instead, it applies more broadly to *disputes* bearing the requisite relationship to the 1990 Agreement. Second, the clause is not limited to disputes growing out of the 1990 Agreement; it applies, not only to disputes "arising under or out of" that agreement, but also to those "arising in relation to" that agreement. Thus, Wyeth's interpretation is difficult to reconcile with the language of the forum selection clause.

---

**3.** Wyeth states: "[Wyeth] has asserted no claim for breach of any obligation imposed by the 1990 Agreement." (Appellant's Br. at 28).

That the phrase "arising in relation to" is broader than "arising under" is illustrated by our court's interpretation of 28 U.S.C. § 1334(b), which states that a district court:

shall have original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11.

28 U.S.C. § 1334(b) (emphasis added); *cf. Omron Healthcare, Inc. v. Maclaren Exports, Ltd.,* 28 F.3d 600, 602 (7th Cir.1994) (looking to the interpretation of the "arising under" term in 28 U.S.C. § 1445(c) in interpreting the same term in a forum selection clause). In interpreting the scope of 28 U.S.C. § 1334(b), we explained that the reach of "related to" jurisdiction is extremely broad, extending to any action the outcome of which "*could conceivably have any effect on the estate being administered in bankruptcy.*" *See Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)(emphasis in original). More important, in comparing 28 U.S.C. § 1334(b) (which reaches claims "related to" cases under title 11) to the general removal statute, 28 U.S.C. § 1441(b) (which is limited to actions "arising under" federal law), we noted that the scope of "related to" jurisdiction is broader than the scope of "arising under" jurisdiction. *See Belcufine v. Aloe,* 112 F.3d 633, 637 n. 6 (3d Cir.1997).

We are unpersuaded by Wyeth's argument that the district court's interpretation of the forum selection clause is "fundamentally inconsistent with other pertinent provisions of the agreement." (Appellant's Br. at 43). In making this argument, Wyeth relies principally on the "Reservation of Rights" provision, which stated that the payment of one-third of the defense costs under the 1990 Agreement would not "constitute evidence of, or an admission by either party regarding the appropriate apportioning of Defense costs of the Carriers under the policies . . . ." (App.55). There is, however, no inconsistency because the "Reservation of Rights" provision concerns the *merits* of the parties' dispute, not the *forum* in which the dispute is to be adjudicated. The same is true with re-

spect to the other provision of the 1990 Agreement on which Wyeth relies, *i.e.,* the provision stating that the parties adopted the 1990 Agreement "without prejudice to or waiver of their respective positions" as to which insurance policies apply to particular claims. (App.52). This provision too concerns the *merits* of the dispute, not the *forum* in which it is to be adjudicated.

In sum, we find the relevant terms of the 1990 Agreement to be unambiguous and we thus see no basis for considering the scant extrinsic evidence that Wyeth has proffered. *See United States v. Charter Int'l Oil Co.,* 83 F.3d 510, 519 (1st Cir.1996) ("While in routine contract interpretation extrinsic evidence may be considered when the disputed terms are ambiguous, we do not find the decree ambiguous, and such evidence may not be considered to contradict the written terms of the agreement.").

Wyeth argues that circuit precedent supports its interpretation of the forum selection claims. Pointing to language in our decisions in *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 203 (3d Cir.1983), and *Crescent Int'l Inc. v. Avatar Communities, Inc.,* 857 F.2d 943, 944 (3d Cir.1988), Wyeth contends that a forum selection clause is applicable only where, "the plaintiff's claims ultimately grow out of the contractual relationship created by a contract containing a forum selection clause and the contract is the basic source of any duty to the plaintiff." (Appellant's Br. at 25–26) (citation and internal quotation marks omitted). There is a fundamental flaw in Wyeth's argument. This is a contract interpretation case. Therefore, whether or not a forum selection clause applies depends on what the *specific clause at issue* says. Drawing analogy to other cases is useful only to the extent those other cases address contract language that is the same or substantially similar to that at issue. Neither the forum selection clause in *Coastal Steel* nor that in *Crescent* contained the phrase "arising in relation to" or something similar.[4] Hence, those cases do not assist us

---

4. The forum selection clause in *Coastal Steel* stated:

These conditions shall be construed in accordance with English law. In the event of any

in interpreting the scope of the forum selection clause at hand.

■ At the conclusion of its opinion, the district court provided an alternative basis for its grant of CIGNA's summary judgment motion. CIGNA, in its response to Wyeth's Complaint, had asserted that the 1990 Agreement barred Wyeth's claims to reallocate past payments and decide future payments because (a) the 1990 Agreement stated that payments made under it (one third of costs) were made as a "compromise and accord," and (b) the 1990 Agreement precluded additional claims for future payments so long as the 1990 Agreement remained in existence (as CIGNA alleged it was). Based on CIGNA's assertions, the district court held that CIGNA had "convincingly argue[d] that numerous issues central to this case involve the interpretation of the ... 1990 Agreement." (Dist. Ct. Op. at 8). Wyeth argues that there was error here too. We disagree.

■ Wyeth argues that a forum selection clause cannot be implicated as a result of a "defense" based on a contract that contains a forum selection clause. In support, Wyeth cites the Second Circuit's decision in *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 681–82 (2d Cir.1993). Once again, however, Wyeth errs by premising its argument on what it alleges to be general principles regarding the application of forum selection clauses, rather than focusing on the language of the particular clause at issue.

The answer to the question whether a "defense" based on a contract that contains a forum selection clause implicates that clause depends on the language of the clause.[5] Here, as we have noted, the clause is broadly worded, extending to any dispute "arising ... in relation to." This language easily encompasses a dispute in which the 1990 Agreement is raised as a defense. *Corcovado* is distinguishable because it contains no analysis of a forum selection clause with comparable language.[6]

### III.

The district court properly granted summary judgment in favor of CIGNA. The proper forum for the adjudication of Wyeth's suit is a court in England. Wyeth and CIGNA are sophisticated business entities. Of their own accord, they entered into an agreement broadly vesting the English courts with exclusive jurisdiction over "any dispute arising in ... relation to" the 1990 Agreement, and we hold them to the sweeping language that they adopted. It bears emphasis, however, that we hold only that the parties' dispute must be adjudicated in the English courts. We express no view whatsoever concerning the merits of their dispute, which is a matter for the English courts.

*AFFIRMED.*

---

dispute arising the same shall be determined by the English Courts of Law.
709 F.2d at 193. In turn, the forum selection clause in *Crescent* stated:
[A]ny litigation upon any of [the contract's] terms ... shall be maintained [in a state or federal court in Miami, Florida].
857 F.2d at 944.

**5.** The Seventh Circuit's analysis in *Omron Healthcare, Inc. v. Maclaren Exports, Ltd.*, 28 F.3d 600 (7th Cir.1994), illustrates the point. In *Omron*, the plaintiff sued for trademark infringement, and the defendant sought dismissal based on a "arising out of" forum selection clause that was implicated as a result of a *defense* asserted by the defendant. *Id.* at 601–02. We note that in considering the question of whether the dispute "arose out of" or "under" the contract, it was irrelevant to the panel that the forum selection clause had been implicated by means of a defense. The only issue was whether the dispute "arose out of" the contract containing the forum

selection clause. *Id.* at 602; *cf. Belcufine*, 112 F.3d at 637–38 (fact that bankruptcy issues were raised in the form of a defense to a state law claim did not prohibit the suit from becoming "related to" title 11 for purposes of 28 U.S.C. § 1334(b)).

**6.** In footnotes, Wyeth refers briefly to two additional arguments: first that "the forum selection clause cannot apply to [Wyeth's] claims for an adjudication of CIGNA's prospective obligations under the policies" and, second, that CIGNA should be equitably estopped from contending that the forum selection clause applies to this dispute. (Appellant's Br. at 8 n. 3; *see also* Appellant's Br. at 30 n. 5). However, arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived. *See Commonwealth of Pa. v. HHS*, 101 F.3d 939, 945 (3d Cir.1996).