NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1606
_____

EUGENIA WINSTON,
Appellant

v.

THE BANK OF NOVA SCOTIA,
d/b/a Scotia Bank
_____

On Appeal from the District Court
of the Virgin Islands
D.V.I. No. 3-14-cv-00093
District Judge: Honorable Juan R. Sanchez

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 15, 2017

Before: SMITH, *Chief Judge*, McKEE, and SCIRICA, *Circuit Judges*

(Filed: January 12, 2018)

_____

OPINION*
_____

SMITH, *Chief Circuit Judge.*

Eugenia Winston filed a complaint in the District Court of the Virgin Islands

alleging that her former employer, The Bank of Nova Scotia, violated her rights under Title

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

VII of the Civil Rights Act when it terminated her employment in December of 2013. Winston also alleged that the Bank was liable under territorial law for its tortious conduct.[1] The Bank successfully moved for summary judgment on all of Winston's claims. Proceeding pro se, Winston filed this timely appeal, challenging only the dismissal of her Title VII claims.[2] For the reasons that follow, we will affirm.

Winston began her employment with the Bank in November of 2008, where she worked at the St. John Branch as a teller. Her scheduled start time was 8:00 AM. Her five plus years of employment at the Bank were notable for her persistent problems with tardiness, absenteeism, and her transfers to three other branches.

In June of 2010, Winston transferred to the Tutu Branch. A September 2011 performance review documented that Winston "need[ed] to work harder on her tardiness and her absenteeism." **SA132.** She also had a verbal dispute with the head teller, LaToya Callwood, that deteriorated into name calling, leading the branch manager to order the women to apologize to each other. Although Winston continued to work at the Tutu Branch for a period of time, she transferred to the Havensight Branch in late 2011.

After transferring to the Havensight Branch, Winston was notified in a memorandum dated January 13, 2012, that she had been late on 27 occasions over the

---

[1] Winston was initially represented by counsel. The District Court granted leave to withdraw prior to the filing of the Bank's summary judgment motion. Thereafter, Winston proceeded pro se.

[2] The District Court exercised jurisdiction under 28 U.S.C. § 1331 and 48 U.S.C. § 1612(a). We have appellate jurisdiction under 28 U.S.C. § 1291. We conduct plenary review of an order granting summary judgment. *Kachmar v. SunGard Data Syst., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

previous two-month period. **SA133-34.** Further documentation indicated that Winston's tardiness was increasing, **SA136,** and she was placed on an Employee Development Plan. Eventually, she was placed on a Performance Improvement Plan, which noted that counseling had not been helpful. **SA143.** Yet Winston's performance did not improve. In February of 2013, the Bank notified Winston that it had documented another 54 days for which she had been either tardy in the morning, tardy both in the morning and at lunch, or absent. **SA147-48.**

Shortly thereafter, on April 22, 2013, Winston transferred for the fourth time to the Altona Branch. That same day, she was counseled by her superiors about her "ongoing tardiness and absenteeism." **SA150.** In June of 2013, Winston received a "Final Warning" after being "absent or tardy 20 times" since her transfer. **SA150.** In addition to the "Final Warning," the Bank suspended Winston without pay for three days and notified her that further unexcused absences or tardiness in the next six months would result in her termination. **SA150.**

The warning went unheeded. In December of 2013, Winston and the Bank discussed the Voluntary Severance Option Plan (VSOP). The Bank and Winston executed a VSOP, which provided for a severance payment to Winston in exchange for her severance and the execution of a general release. **SA153.** After signing the VSOP, Winston changed her mind and refused to sign the release. The Bank then decided to terminate Winston effective December 20, 2013. **SA154.**

In January 2014, Winston filed a charge of discrimination with the Virgin Islands Department of Labor, alleging sex discrimination and retaliation. **SA155.** Winston's

3

charge appended a statement, which described the alleged offensive conduct. **SA156-61.** The statement complained of bullying and interpersonal conflicts at the various branches, and also asserted that she had been touched inappropriately by her female supervisor at the Altona Branch. Winston claimed that she had complained to the manager, but to no avail, and that this precipitated her decision to leave her job. After the EEOC issued a right to sue letter, Winston filed a complaint in the District Court which included claims of sexual harassment and retaliation in violation of Title VII.

In February of 2016, during her deposition, Winston acknowledged that she was not sexually harassed at either the St. John Branch or the Tutu Branch. **SA63-65.** But she explained that the employees at the Havensight and Altona Branches "singl[ed her] out with an attitude" and "plotted" against her. **SA64**. She asserted that there was "lesbianism" going on, **SA86,** and "they tried to pull [her] into it." **SA87.** During her deposition, Winston also complained for the first time that she had been inappropriately touched by Bilinda Fontaine, another employee at the Havensight Branch. **SA88.**

After discovery, the Bank moved for summary judgment, which the District Court granted. It concluded that some of Winston's claims were time-barred because they happened before March 2013, when the 300 day period commenced. The Court rejected any assertion that there was a continuing violation because the complained of conduct was distinct and involved different persons.

In addition, the District Court concluded that summary judgment was appropriate on Winston's claim of sexual harassment perpetrated by Fontaine because Winston had not exhausted that claim. Indeed, Winston only raised Fontaine's alleged offensive conduct

4

for the first time in her deposition, which occurred more than a year after the filing of this civil action. The five page statement Winston appended to her charge of discrimination never mentioned Fontaine.

The District Court also determined that Winston had not cast any doubt on the Bank's legitimate non-discriminatory reason for discharging her, i.e., her persistent tardiness. Accordingly, her claim of retaliation could not survive summary judgment. Finally, Winston's hostile work environment claim failed because she had not established that the sexual harassment was severe or pervasive.

This timely appeal followed. Winston's pro se brief does not directly challenge the District Court's legal determinations. Instead, Winston asserts that this case should be allowed to go to a jury because she requested a jury trial in her complaint. *See* Appellant's Br. at 3, 6, 7, 8, 9. Winston also complains that the District Court should have appointed legal representation for her after the Court granted her counsel's request to withdraw. These two contentions were followed by Winston's recitation of the facts supporting her claims.

We are mindful of Winston's desire for her day in court. Nonetheless, summary judgment is a legitimate tool in federal practice to demonstrate that there is no genuine issue for trial. Indeed, in *Celotex Corp. v. Catrett*, the Supreme Court confirmed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." 477 U.S. 317, 327 (1986). Nor is there an obligation by the court to appoint counsel for a plaintiff. *See Tabron v. Grace*, 6. F.3d 147, 153, 155-56 (3d Cir. 1993) (noting there is no statutory right

to appointed counsel in a civil action and enumerating factors to take into account when appointment of counsel is at issue). Because Winston has not directed us to a request for the appointment of counsel that was denied by the District Court, there is no need to consider whether the Court erred in this regard. Thus, neither Winston's dissatisfaction with the summary judgment device nor her belief that counsel should have been appointed provide a basis for disturbing the District Court's judgment.[3]

---

[3] Although Winston's pro se brief does not take issue with any specific aspect of the District Court's decision, we conclude after reviewing the record that the District Court appropriately determined that some of Winston's claims were time-barred, that Winston had failed to exhaust her claim based on Fontaine's alleged misconduct, and that Winston did not cast any doubt on the Bank's legitimate non-discriminatory reason for terminating her employment. Finally, to the extent Winston asserted any other arguments in passing, we conclude that they were "not squarely argued" and "are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).