**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3122
_____

DANIEL GATSON,
AKA Tokyo Gatson,
                              Appellant

v.

FEDERAL BUREAU OF INVESTIGATION
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civ. No. 2:15-cv-05068)
District Judge: Honorable John M. Vazquez
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 26, 2019

Before: GREENAWAY, JR., RESTREPO and FUENTES, Circuit Judges

(Opinion filed: July 31, 2019)
_____

OPINION[*]
_____

PER CURIAM

        Daniel "Tokyo" Gatson appeals an order of the District Court granting summary

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

judgment to the Federal Bureau of Investigation ("FBI") and denying his own motion for summary judgment in this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. We will affirm.

I.

Gatson was charged in the United States District Court for the District of New Jersey with transporting (and conspiring to transport) stolen property over state lines. Before trial, Gatson filed a FOIA request with the FBI, seemingly in an effort to collaterally conduct discovery for his criminal case.[1] The FOIA request sought documents relating to Gatson, his confederates in the "James Bond Gang," various FBI Special Agents, and Gatson's cellmates; the request was largely time-limited in scope to a period coinciding with the conspiracy described in the Government's charging document.

Gatson was notified that the FBI had located around 1750 pages of records potentially responsive to his request. The FBI refused to disclose those records, however, citing 5 U.S.C. § 552(b)(7)(A) ("Exemption 7A") and Gatson's then-pending criminal case.[2] So Gatson, proceeding pro se, filed this action in the District Court under 5 U.S.C. § 552(a)(4)(B) to force disclosure. In apparent response, the FBI released 163 pages of records in full (those Bates-stamped "Gatson7" through "Gatson169"), and six pages in part (those Bates-stamped "Gatson1" through "Gatson6"), after segregation from the

---

[1] Gatson was eventually convicted of eleven counts of transporting stolen property over state lines, and one count of conspiracy. We affirmed Gatson's convictions and his 300-month prison sentence. United States v. Gatson, 744 F. App'x 97, 99 (3d Cir. 2018).

[2] Section 552(b)(7)(A) of the FOIA exempts from disclosure law enforcement records with the capacity to impede law enforcement proceedings if disclosed.

latter group of information claimed to be exempt from disclosure.

The FBI then moved for summary judgment. The FBI argued in its motion that it had conducted a thorough records search, that it had properly withheld more than 90 percent of records responsive to Gatson's FOIA request, that categorical withholding is proper under § 552(b)(7)(A) or, in the alternative, under §§ 552(b)(3), (b)(5), (b)(6) and (b)(7)(C)-(E), and that it had properly withheld personnel records for 13 Special Agents because Gatson failed to meet his burden of persuasion on that score. The FBI did not support its motion with a Vaughn[3] index correlating the legal bases for its withholding determinations to specific records. Instead, the FBI relied on a category-based presentation of the withheld records set forth in the declaration of David M. Hardy, its Section Chief of the Record/Information Dissemination Section, Records Management Division, in Winchester, Virginia.

The District Court granted the FBI's motion for summary judgment and denied Gatson's competing motion for summary judgment. Gatson appealed.

II.

We have jurisdiction under 28 U.S.C. § 1291. This Court employs a unique, two-tiered standard in reviewing a district court's order granting summary judgment to a federal agency in FOIA litigation under § 552(a)(4)(b). Abdelfattah v. DHS, 488 F.3d 178, 182 (3d Cir. 2007) (per curiam). Specifically, we first decide whether the district court's ruling has an adequate factual basis, i.e., whether the federal agency's

---

[3] Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

withholding-rationale is "full and specific enough to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." McDonnell v. United States, 4 F.3d 1227, 1242 (3d Cir. 1993). If that threshold question is answered in the affirmative, we next decide whether the district court's ruling is clearly erroneous, reversing only if its findings are unsupported by substantial evidence. See id.

### III.

Gatson raises two challenges to the District Court's decision, and each one implicates a different tier of our review. Gatson claims that the District Court was not provided with information sufficient to support the disclosure exemptions relied on by the FBI.[4] As proof, he cites the absence of a Vaughn index. He also takes issue with the Hardy declaration, describing it as "wholly conclusory, providing NO information that would enable the Plaintiff Mr. Tokyo Gatson to properly evaluate the . . . FBI's decision to withhold the requested documents." Br. at 12. These are first-tier arguments, as they challenge the adequacy of the factual basis supporting the District Court's decision.

Gatson also raises a second-tier argument. He claims that the District Court clearly erred when it failed to make a specific "finding on segregability or lack thereof." Br. at 18. According to Gatson, such a finding is required in every FOIA case and its

---

[4] We discern no basis to successfully challenge the FBI's search for responsive records; Gatson only slights the search in passing, see Br. at 2, in any event, cf. John Wyeth & Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . ., but not squarely argued, are considered waived.").

4

absence here necessitates a remand.

Gatson's arguments have been carefully considered.  We ultimately conclude that his arguments are unavailing, and that the District Court's judgment should be affirmed.

A.    <u>The Hardy declaration provided adequate support for the District Court's decision.</u>

To justify the withholding in this case, the FBI primarily relied on—and the District Court accepted the applicability of—Exemption 7A, "which authorizes the withholding of 'records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." <u>ACLU of N.J. v. FBI</u>, 733 F.3d 526, 531 (3d Cir. 2013) (quoting 5 U.S.C. § 552(b)(7)(A)).[5]  The District Court's determination that withholding under Exemption 7A is proper has an adequate factual basis if the Hardy declaration "describe[d] the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption." <u>Davin v. DOJ</u>, 60 F.3d 1043, 1050 (3d Cir. 1995).  And it did do that, for substantially the reasons given in the District Court's opinion, <u>see</u> SA245-46, and for the added reasons given in this one, notwithstanding Gatson's contrary protestations, <u>see, e.g.</u>, Br. at 8-9.

As a preliminary matter, we observe that "a <u>Vaughn</u> index generally is not required for withholding under" Exemption 7A. <u>Biear v. Att'y Gen.</u>, 905 F.3d 151, 154

---

[5] There is no dispute that the responsive records here were "compiled for law enforcement purposes" and that the FBI thus satisfied the threshold requirement for application of Exemption 7A.

n.9 (3d Cir. 2018).  Rather, the defendant may submit a public affidavit describing in sufficient detail the categories of records withheld and the bases for the withholding.  See ACLU of N.J., 733 F.3d at 531.  That is what the FBI did here.[6]

For the six pages of records withheld in part (Gatson1-6), Hardy outlined in great detail that all identifying information of FBI and local law enforcement personnel in those pages was exempt from disclosure under §§ 552(b)(6) and (b)(7)(C) and thus redacted, that parts of those pages were exempt under § 552(b)(7)(A) because the information was compiled during investigation into Gatson's criminal activities, that sensitive file numbers were exempt under § 552(b)(7)(E) because they could be used by a bad actor to perform a mosaic analysis that would assist in evading law enforcement, and that information about investigative techniques used by law enforcement in Gatson's case also were exempt under § 552(b)(7)(E).  Hardy's description of the information withheld from the partially disclosed records, together with (1) his explanations for any redactions, (2) the very fact that the withholding was partial, and (3) the amenability of all of that information to construction of a basic Vaughn index (constructed in the margin[7] to

---

[6] The District Court concluded that the Hardy declaration itself "is a sufficiently detailed Vaughn index of the categories of withheld documents." SA246.  We disagree with that conclusion.  A Vaughn index is "an itemized index specifying the basis for withholding on a document-by-document basis." Biear, 905 F.3d at 154.  A public affidavit like the Hardy declaration is an alternative to, not a version of, a Vaughn index.

[7] In the index below, "JBG" refers to the "James Bond Gang."

| Bates # | Exemption(s) Asserted | Basis for Exemption |
| --- | --- | --- |
| Gatson1 | §§ 552(b)(6) and (b)(7)(C) | FBI personnel IDs |
| | §§ 552(b)(6) and (b)(7)(C) | Local law enforcement IDs |

illuminate as much), leaves us satisfied that there is sufficient "'connective tissue'

between the document[s], the deletion[s], the exemption[s] and the explanation[s],"

Davin, 60 F.3d at 1051, by the FBI for the District Court to have adequately assessed the

exemption claims related to those particular records.

The same goes for the records withheld in full—i.e., for all records other than

those Bates stamped "Gatson1" through "Gatson169."  Hardy explained that those

records all were found in the FBI's investigative file, and that they could be lumped into

one of twelve "type" categories: (a) forms used to record the results of FBI interviews;

(b) envelopes for holding evidence; (c) forms advising persons of their Miranda rights;

| | § 552 (b)(7)(E) | "Sensitive case file numbers" |
|---|---|---|
| Gatson2 | §§ 552 (b)(6) and (b)(7)(C) | FBI personnel IDs |
| | §§ 552 (b)(6) and (b)(7)(C) | Local law enforcement IDs |
| | § 552 (b)(7)(A) | Relates to pending investigation |
| | § 552 (b)(7)(E) | "Sensitive case file numbers" |
| Gatson3 | §§ 552 (b)(6) and (b)(7)(C) | Local law enforcement IDs |
| | § 552 (b)(7)(A) | Relates to pending investigation |
| | § 552 (b)(7)(E) | "Sensitive case file numbers" |
| | § 552 (b)(7)(E) | JBG/Gatson modus operandi, techniques |
| Gatson4 | §§ 552 (b)(6) and (b)(7)(C) | FBI personnel IDs |
| | §§ 552 (b)(6) and (b)(7)(C) | Local law enforcement IDs |
| | § 552 (b)(7)(A) | Relates to pending investigation |
| | § 552 (b)(7)(E) | "Sensitive case file numbers" |
| | § 552 (b)(7)(E) | JBG/Gatson modus operandi, techniques |
| Gatson5 | §§ 552 (b)(6) and (b)(7)(C) | FBI personnel IDs |
| | §§ 552 (b)(6) and (b)(7)(C) | Local law enforcement IDs |
| | § 552 (b)(7)(A) | Relates to pending investigation |
| | § 552 (b)(7)(E) | "Sensitive case file numbers" |
| | § 552 (b)(7)(E) | JBG/Gatson modus operandi, techniques |
| Gatson6 | §§ 552 (b)(6) and (b)(7)(C) | FBI personnel IDs |
| | § 552 (b)(7)(A) | Relates to pending investigation |
| | § 552(b)(7)(E) | "Sensitive case file numbers" |
| | § 552(b)(7)(E) | JBG/Gatson modus operandi, techniques |

7

(d) forms documenting transfers of property to persons during an investigation; (e) forms documenting contacts with outside law enforcement agencies; (f) forms documenting Sentinel input data; (g) intra-FBI emails; (h) evidence logs; (i) grand jury subpoenas; (j) court filings (which may or may not be sealed); (k) miscellaneous administrative documents; and (l) other investigative documents, which could not be described in any detail without compromising the FBI's investigations. See SA71-72.  Those categories, either facially or through detailed explanation by Hardy, plainly provided the District Court with ample information to assess the applicability of Exemption 7A, including an inquiry as to whether disclosure would interfere with the then-pending criminal prosecution of Gatson.

Hardy further explained that all of the responsive records could be assigned to one or more of the following three "functional" categories: (1) "Evidentiary/Investigative Materials," (2) "Administrative Materials," and (3) "Public Source/Non-Investigative Harm Materials." SA73.  The first two categories, as defined in the Hardy declaration, readily fit the Exemption 7A paradigm. Cf. Citizens for Responsibility & Ethics in Washington v. DOJ, 746 F.3d 1082, 1088–89 (D.C. Cir. 2014) (holding that "categorical treatment" may be used "when the range of circumstances included in the category 'characteristically support[s] an inference' that the statutory requirements for exemption are satisfied").  And responsive records falling in the third functional category all were produced to Gatson. See SA77-78.[8]

---

[8] For all of the withheld records, Hardy outlined with sufficient specificity the harm to the FBI's enforcement efforts that would result if any of the documents were disclosed. See

In sum, nothing about the FBI's use of categorical instead of document-by-document analysis and presentation suggests that the District Court lacked an adequate factual basis on which to rule.[9] We thus move to Gatson's next claim and the second tier of our review.

B.      The District Court did not clearly err in declining to make a segregability finding.

While Gatson correctly ascertains from FOIA (5 U.S.C. § 552(b)) and our precedent that "[a]ny reasonably segregable, non-exempt portion of a record is to be made available to the person requesting that record," Lame v. DOJ, 654 F.2d 917, 921 (3d Cir. 1981), he offers nothing but conjecture to suggest that the FBI did not segregate non-exempt material. In fact, Hardy relayed that "[e]very effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable, non-exempt information in the responsive records; however, the FBI was only able to segregate 169 pages from the responsive records." SA63. The FBI is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable

_____

SA251 (District Court: "The FBI provided numerous reasons why disclosure of the requested documents would interfere with the pending prosecution and potential prosecutions, including but not limited to, (1) the identification of law enforcement personnel and witnesses who could be targeted for potential intimidation or physical harm, and (2) the improper use of evidence uncovered by the government, including the alteration or destruction of evidence or the creation false evidence."); cf. Citizens for Responsibility & Ethics in Washington, 746 F.3d at 1098 (stating in an Exemption 7A case that courts "give deference to an agency's predictive judgment of the harm that will result from disclosure of information").

[9] That the District Court's Exemption 7A ruling is adequately supported by the Hardy declaration disposes of Gatson's first set of arguments; we thus need not address whether the alternative statutory FOIA exemptions invoked by the FBI and discussed by the District Court were adequately factually supported as well.

material." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).  And, simply put, conjecture is not enough to rebut that presumption.[10]

Accordingly, for the reasons given in this opinion, we will affirm the judgment of the District Court.

_____

[10] The FBI acknowledges that the District Court did not make an express finding regarding segregability. See FBI Br. at 31-32.  But Gatson is incorrect that this fact necessitates a remand under Abdelfattah.  As a general matter, we may affirm on any record-supported basis. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).  As for Abdelfattah, in that case we remanded proceedings in part based on the Government's failure to provide in its public affidavit and Vaughn index a basis for the district court to make a "reasonably segregable" finding. 488 F.3d at 186-87.  The lack of an explicit finding by the district court was not enough to generate the remand on this issue.  Instead, our conclusion about the government's deficient court filings was supported by the facts that "there [was] no description of the agency's process for making such a determination [about segregability], no factual recitation of why certain materials are not reasonably segregable, and no indication of 'what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.'" Id. (citation omitted).  The situation in Abdelfattah is not comparable to this case, where Hardy in his declaration outlined exactly why certain records defied segregation to an extent beyond that which was accomplished by the FBI in order to produce certain portions of those records. See, e.g., SA102 (Hardy on the applicability of a particular exemption: "The protected information was either exempt itself or was so intertwined with non-exempt information that segregation of the non-exempt information was not reasonably possible without revealing exempt information or leaving nothing but meaningless words or sentence fragments.").  Abdelfattah thus does not require remand.

10